[Crim. No. 4428. Fourth Dist., Div. One. Aug. 27, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL LOPEZ TORRES, JR., Defendant and Appellant.

## COUNSEL

F. David Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Larry C. King, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**AULT, J.**—Convicted by a jury of robbery (Pen. Code, § 211) and attempted robbery (Pen. Code, §§ 664 and 211), Manuel Lopez Torres, Jr., appeals from the judgment which sentenced him to prison for consecutive terms. The issues raised on appeal require us to review the evidence, which we recite in the light most favorable to the judgment.

At 3 p.m. on March 8, 1970, Torres entered Red's Ranch Market in Orange County, displayed a chrome-plated revolver, pushed the gun into the back of the clerk, Ronald Bosak, and demanded money. On command, Bosak placed approximately $140 in currency and coins in a bag which Torres took before leaving the store.

At approximately 4:15 p.m. on March 26, 1970, Torres entered the K & C Liquor Store in Santa Ana. He ordered a bottle of Imperial whiskey from the clerk, Stafford Hurrell, who was 72 years of age and the only person on duty. Hurrell obtained the bottle from the shelf and set it near the cash register as two customers entered the store. Torres walked around the store observing other items. When the other customers had been served and had left the store, he stepped behind the counter with a revolver held in an "upraised" position. As Torres approached, Hurrell threw up his hands to ward off the blow. Torres struck him in the chin with the gun, then smashed four liquor bottles over his head and fled without taking anything, leaving the clerk stunned and bleeding profusely.

Donnie Dale Dunlap, a deputy sheriff, was off duty at this time and was passing the liquor store in his private car. He saw Torres run from the store to his car and also observed Hurrell stagger to the sidewalk and cry for help. Dunlap first obtained the license number of the car driven by Torres and then pursued it. After a high speed automobile chase, Dunlap captured and arrested Torres. At the time of his arrest, Torres had the chrome-plated revolver in his possession, but no shells were found. The gun had a broken latch and was difficult to fire, but a police department criminalist testified at the trial he had been able to test-fire it successfully. Officer Borja of the Santa Ana Police Department was summoned to the scene, where in due course he gave Torres a *Miranda* warning and asked: ". . . with those rights in mind, do you wish to talk to me?" Torres made no reply, and Borja asked no more questions. About thirty minutes later

at the police station, Detective McClain, knowing of the first warning, again advised Torres of his constitutional rights. Without reading from a card, McClain advised him: "I told him that he had the absolute right to remain silent; that he had the right to talk with an attorney and have an attorney present with him at all steps of the proceedings; that anything he said could and would be used against him in a court of law; and that if he could not afford to hire an attorney, that one would be appointed to represent him at no cost to him." Torres seemed to understand everything said to him, although he appeared to be under the influence of narcotics to a degree. He said: "Yeah, I know my rights." This time, when asked if, having his rights in mind, he would answer any questions, he said he would. In the interrogation which followed, he confessed to the robbery and the attempted robbery described above. With respect to the attempted robbery, he stated to McClain: ". . . he had noticed that there was an old man who worked in the liquor store, and he figured that it would be an easy place to hit; and that he had gone in there on that particular day with a gun and had told the old man that 'This is a robbery, give me all your money,' and the old man resisted, and he hit him over the head." The confession was not recorded, but McClain made notes which he later destroyed after copying Torres' statements verbatim into a formal police report. Torres was identified during the trial by Bosak, the robbery victim. No objection was made. Earlier Bosak had come to court under subpoena to testify at the scheduled preliminary hearing. On his arrival he was informed the hearing had been continued, but he saw Torres sitting in the jury box and immediately identified him as the robber.

The amended information charged Torres had "used a deadly weapon, to-wit: a gun." during both the robbery and the attempted robbery. It also charged he had inflicted great bodily injury on the victim, with the intent to do so, in the course of the attempted robbery. The jury found these allegations to be true, the prepared verdicts using the wording, "used a firearm." The judgment recites Torres "used a firearm within the meaning of Penal Code section 12022.5" during both crimes, and, with respect to the attempted robbery, states he inflicted great bodily injury with the intent to inflict such injury.

## CONTENTIONS ON APPEAL

1. It was reversible error to admit the confession in evidence, because:

a. the *Miranda* warning was inadequate to advise of the right to counsel during the interrogation;

b. defendant was interrogated after he indicated his intent to remain silent;

c. the only evidence of the confession was the uncorroborated testimony of the interrogating officer, who had destroyed his original notes.

2. The identification testimony of the robbery victim should not have been admitted and should have been stricken, because it was tainted by the absence of counsel at a critical pretrial confrontation.

3. The evidence was insufficient to support the finding defendant "used a deadly weapon, to-wit: a gun."

4. The evidence was insufficient to support the conviction of attempted robbery because, other than the alleged confession, there was no evidence of defendant's intent to rob.

5. The allegation defendant, with intent, inflicted great bodily injury should have been stricken, because Penal Code section 213 applies to robbery, and not to attempted robbery.

### THE CONFESSIONS WERE PROPERLY RECEIVED IN EVIDENCE

The contention appellant's confessions were erroneously admitted into evidence is first premised on the claim the *Miranda* warning given by Detective McClain was insufficient because of its terminology. Relying primarily on the definition of "proceeding" contained in Evidence Code section 901, it is urged the admonition, ". . . he had the right to talk to an attorney and have an attorney present with him *at all steps of the proceedings* . . ." (italics added), was inadequate to apprise appellant of the right to the advice and presence of an attorney during the interrogation which followed.

Nothing indicates appellant was in fact confused or understood the word "proceedings" as relating only to future court proceedings. He testified he had no memory of the warning at all, because he was under the influence of heroin at the time. McClain testified he told appellant he would advise him of his rights *before* he questioned him, despite appellant's protestation he was well aware of them because he had heard them many times before. The dictum in *People* v. *Cox,* 269 Cal.App.2d 579, 585 [75 Cal.Rptr. 147], where a similar contention was urged on appeal, is particularly appropriate: "Although appellants did not testify to any misunderstanding of their rights in the premises, they now argue that the phraseology of the warning was such that a person *might have* believed that for some inexplicable reason the officer was advising them only of rights relating to *future court proceedings* and, thus, wholly irrelevant to the subject matter at hand, i.e., the solicitation of a statement. We doubt

that such an interpretation could have been placed upon the officer's admonitions but we need not engage in any fine semantic analysis in the instant case."

Without again stating the full admonition McClain gave appellant, we note the part concerning which it is now claimed confusion *might have arisen* was immediately preceded by the admonition appellant had the absolute right to remain silent and immediately followed by the warning anything he said could and would be used against him in a court of law. These warnings obviously related to the proposed interrogation and not to future court hearings. We think it is unreasonable to pull out from between them the admonition concerning appellant's right to an attorney and to ascribe the technical legal meaning to the word "proceeding" contained in Evidence Code section 901. The word must be read in context and given its ordinary meaning as relating to any act, measure or step in the course of business or conduct. It referred to the matter at hand, i.e., the proposed interrogation, and not to future court proceedings.

Seeking to bring himself within the holdings of *People* v. *Fioritto*, 68 Cal.2d 714 [68 Cal.Rptr. 817, 441 P.2d 625], *People* v. *Ireland*, 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580] and *People* v. *Randall*, 1 Cal.3d 948 [83 Cal.Rptr. 658, 464 P.2d 114], appellant attacks the validity of his confessions because they resulted from an interrogation which took place at the police station after he had remained silent when given a *Miranda* warning at the scene of his arrest. The cases are distinguishable on the facts from the instant case; in all of the cited cases the police persisted in questioning the defendant after he had positively asserted his constitutional rights. In *Fioritto,* the confession resulted from an interrogation after the defendant had refused to sign a written waiver of his rights (p. 717). In *Ireland,* the interrogation followed the defendant's specific request for an attorney (p. 533). In *Randall,* the confession was obtained in the absence of the defendant's attorney after he had requested one and spoken to him on the telephone (pp. 952-953).

Appellant testified he had no recollection of being advised of his constitutional rights by Officer Borja. His claim is based upon the police officer's testimony as developed on cross-examination. As it bears on the issue, we repeat that testimony in full:

"Q [Defendant's attorney] Mr. Borja, you transported Mr. Torres on the 26th of March to the Santa Ana Police Department; is that not correct? A Yes, sir. Q And while you were transporting, you advised him of his rights, did you not? A No, sir. I advised him prior to transporting. Q All right. Prior to transporting him. And after you advised him of his rights, you asked him if, 'With those rights in mind, do you wish to talk

to me'; is that right? A I asked him first if he understood his rights. Q But you asked him also, with those rights in mind, are you willing to talk? A Yes, sir. Q And he made no reply to you? A Yes, sir. Q You did not ask him any questions? A That's correct."

We think the conversation at the scene of the arrest left the question of whether appellant wished to assert or waive his constitutional rights ambiguous and unclear, and justified Detective McClain in making further inquiry some thirty minutes later. Under the circumstances, neither *Miranda* nor the California cases we have referred to, precluded McClain from again advising appellant of his rights, or from interrogating him after he unequivocally waived them. Absent any indication of coercion, subterfuge, confusion, or undue delay, we do not believe the rules established in *Miranda, Fioritto, Ireland* and *Randall* should be expanded to govern the factual situation presented here.

 The contention the confessions were inadmissible because McClain's testimony was uncorroborated is without merit. Testimony a defendant was advised of his constitutional rights, waived them, and made the statements attributable to him need not be corroborated. (*People* v. *Cooper,* 10 Cal.App.3d 96, 108 [88 Cal.Rptr. 919].) The rule is not altered because McClain destroyed the original notes taken during the interrogation after he had copied appellant's answers to his questions into his formal report. While such notes are discoverable, and should be made available to a defendant upon request if they exist, the prosecution is not required to keep all original notes of transactions. (*People* v. *Dickerson,* 270 Cal.App.2d 352, 358-360 [75 Cal.Rptr. 828].) Failure to produce original notes taken during an oral confession may arguably affect the weight to be given testimony concerning it, but appellant has cited no case, and we have found none, which holds the inability to produce such notes makes testimony concerning what was said inadmissible.

### IDENTIFICATION TESTIMONY OF THE ROBBERY VICTIM

Without objection, Bosak, the victim of the March 8 robbery, identified appellant as the robber at the trial. On appeal, appellant contends this testimony should not have been admitted and should have been stricken because the in-court identification was tainted by an illegal pretrial identification. The claim is based upon a pretrial identification made by Bosak when he appeared in answer to a subpoena for appellant's scheduled preliminary hearing. Bosak did not hear the case called. He was informed by the district attorney the matter would be continued, and was asked, "Do you see the man that held you up?" He identified appellant who was sitting in the jury box as the man who robbed him.

Appellant concedes the pretrial identification here was not a line-up staged by the police, and that the *Wade-Gilbert* rule has not been applied to courtroom identifications. Nevertheless, he asserts the rule should be applicable to any pretrial identification conducted by law enforcement officers. Since there was no evidence appellant's counsel was present, and none to show Bosak's trial identification was of independent origin, not tainted by the earlier identification made under suggestive circumstances, it is urged the trial identification should not have been permitted and that reversal should follow.

While we are convinced courtroom identifications do not present the dangers of police line-ups which generated the *Wade-Gilbert* rule, we need not reach the issue raised. From his questioning, it is obvious appellant's trial attorney was well aware of the *Wade-Gilbert* principles. He chose not to object to the identification testimony when it was offered and made no motion to strike it after he had developed the basis for the motion on cross-examination. ■ Failure to raise the identification issue in the trial court by objection or motion to strike, precludes appellant from asserting the issue on appeal. (*People* v. *Morrow*, 276 Cal.App.2d 700, 703-704 [81 Cal.Rptr. 201]; *People* v. *Diaz*, 276 Cal.App.2d 547, 554 [81 Cal.Rptr. 16]; *People* v. *Levine*, 276 Cal.App.2d 206, 207-208 [80 Cal.Rptr. 731]; *People* v. *Rodriguez*, 266 Cal.App.2d 766, 769-770 [72 Cal.Rptr. 310].)

### SUFFICIENCY OF THE EVIDENCE

■ Except for his confession, appellant contends the evidence is insufficient to show he intended to rob the liquor store and to support his conviction of attempted robbery. We disagree. Without his confession, the evidence of his conduct after he entered the store unmistakably supports the conclusion he intended to commit robbery, but was frustrated because the intended victim refused to cooperate. (See *People* v. *Henderson*, 255 Cal.App.2d 513, 517 [63 Cal.Rptr. 164].) Certainly the evidence was sufficient to establish the corpus delicti of the crime of attempted robbery and to permit receipt of his confession in evidence. (*People* v. *McMonigle*, 29 Cal.2d 730, 738 [177 P.2d 745].)

■ Both appellant and respondent mistakenly argue the sufficiency of the evidence to support the jury's findings appellant "used a deadly weapon, to-wit: a gun." in the commission of both the robbery and the attempted robbery. Although the amended information uses the quoted language as to both charges, the verdicts found appellant "used a firearm" in connection with them. Robbery perpetrated while armed with a dangerous or deadly weapon is first degree robbery. (Pen. Code, § 211a.)

A revolver is a dangerous or deadly weapon within the meaning of the section even if unloaded and not operable. (*People* v. *Aranda*, 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265]; *People* v. *Diaz, supra,* 276 Cal.App.2d 547, 558.) As appellant himself demonstrated in the attempted robbery, a revolver may be used as a bludgeon. Thus, insofar as it related to the degree of the offenses, the discrepancy between the information and the jury's findings is immaterial; the finding appellant "used a firearm" in the commission of both the robbery and the attempted robbery supports his conviction of those crimes in the first degree and it was not necessary for the prosecution to prove the revolver used was loaded or in operating condition.

■ As to Penal Code section 12022.5 (an issue not raised on appeal), we conclude the section is applicable to any person who uses an operable firearm in the commission of a robbery or an attempted robbery. The prosecution need not prove the firearm used was loaded. The revolver used by appellant was introduced into evidence. While it was defective, substantial evidence supports the conclusion it was operable as a firearm.

## APPLICABILITY OF PENAL CODE SECTION 213

■ Finally, appellant contends the provisions of Penal Code section 213 which increase the penalty to be assessed ". . . in any case in which defendant committed robbery, and in the course of commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery, . . ." were improperly applied to his charge and conviction of attempted robbery. Although we suspect appellant to be the beneficiary of legislative oversight, we agree. Unlike Penal Code sections 12022 and 12022.5, which also increase penalties under varying circumstances, section 213 is made applicable to robbery only, and not to attempted robbery. The argument the section is applicable in any event, because the evidence shows appellant actually committed robbery in taking and breaking four liquor bottles over the clerk's head, is specious. Applicability of the section is obviously geared to charge and conviction, and not to proof. Appellant was neither charged nor convicted of robbery in connection with the liquor store episode.

The words "The defendant with the intent to inflict such injury, inflicted great bodily injury." are stricken from that part of the judgment relating to appellant's conviction of attempted robbery. As so modified, the judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied September 16, 1971, and appellant's petition for a hearing by the Supreme Court was denied November 4, 1971. Peters, J., was of the opinion that the petition should be granted.