TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 98-204 |
| of | : | December 30, 1998 |
| DANIEL E. LUNGREN<br>Attorney General | : | |
| GREGORY L. GONOT<br>Deputy Attorney General | : | |

THE HONORABLE MICHAEL D. BRADBURY, DISTRICT ATTORNEY, COUNTY OF VENTURA, has requested an opinion on the following question:

Prior to the filing of a criminal complaint, may law enforcement agencies destroy interview notes containing witness statements that have been transferred to a formal report?

CONCLUSION

Prior to the filing of a criminal compliant, law enforcement agencies may destroy interview notes containing witness statements that have been transferred to a formal report.

ANALYSIS

The question presented for resolution concerns recent changes in California's criminal discovery statutes (Pen. Code, §§ 1054-1054.7)[1] and case law holding that interview notes of witness statements are subject to discovery (*Thompson* v. *Superior Court* (1997) 53 Cal.App.4th 480). Prior to the filing of a criminal complaint, may law enforcement agencies destroy their notes of witness statements that have been transferred to formal reports? We conclude that the new discovery statutes do not prohibit the destruction of interview notes in the circumstances presented.

Comprehensive criminal discovery reforms were enacted when the voters approved an initiative measure, Proposition 115, on June 5, 1990. The purposes of the reforms are set forth in section 1054:

"This chapter shall be interpreted to give effect to all of the following purposes:

"(a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery.

"(b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested.

"(c) To save court time in trial and avoid the necessity for frequent interruptions and postponements.

"(d) To protect victims and witnesses from danger, harassment, and undue delay of the proceedings.

"(e) To provide that no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States."

The materials and information subject to discovery by each side in a criminal proceeding are described in sections 1054.1 and 1054.3. Section 1054.1 states with respect to necessary

---

[1] All references hereafter to the Penal Code are by section number only.

disclosures by the prosecuting attorney:

"The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies:

"(a) The names and addresses of persons the prosecutor intends to call as witnesses at trial.

"(b) Statements of all defendants.

"(c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged.

"(d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial.

"(e) Any exculpatory evidence.

"(f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."[2]

Section 1054.3 provides with respect to necessary disclosures by defense counsel:

"The defendant and his or her attorney shall disclose to the prosecuting attorney:

"(a) The names and addresses of persons, other than the defendant, he or she intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those

---

[2] We will assume, without deciding, that the only notes or reports of witness statements that are discoverable are "of witnesses whom the prosecutor intends to call at the trial" (see § 1054.3, subd. (a)) and that the notes in question here would be reflective of the statements of witnesses whom the prosecutor intends to call at the trial.

persons, including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial.

"(b) Any real evidence which the defendant intends to offer in evidence at the trial."

Section 1054.5 governs when discovery rights may be asserted and how they may be enforced:

"(a) No order requiring discovery shall be made in criminal cases except as provided in this chapter. This chapter shall be the only means by which the defendant may compel the disclosure or production of information from prosecuting attorneys, law enforcement agencies which investigated or prepared the case against the defendant, or any other persons or agencies which the prosecuting attorney or investigating agency may have employed to assist them in performing their duties.

"(b) Before a party may seek court enforcement of any of the disclosures required by this chapter, the party shall make an informal request of opposing counsel for the desired materials and information. If within 15 days the opposing counsel fails to provide the materials and information requested, the party may seek a court order. Upon a showing that a party has not complied with Section 1054.1 or 1054.3 and upon a showing that the moving party complied with the informal discovery procedure provided in this subdivision, a court may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, continuance of the matter, or any other lawful order. Further, the court may advise the jury of any failure or refusal to disclose and of any untimely disclosure.

"(c) The court may prohibit the testimony of a witness pursuant to subdivision (b) only if all other sanctions have been exhausted. The court shall not dismiss a charge pursuant to subdivision (b) unless required to do so

by the Constitution of the United States."[3]

In *Thompson* v. *Superior Court*, *supra*, 53 Cal.App.4th 480, defense counsel disclosed to the prosecution certain investigation reports of interviews of two defense witnesses but refused to deliver the interview notes upon which the reports were based. (*Id.*, at pp. 482-483.) The court ruled that the interview notes were discoverable if they were still in existence and if they did not contain the attorney's work product or other privileged material. (*Id.*, at p. 485.) With respect to whether the interview notes had to be *preserved* in order to be turned over to opposing counsel, the court merely noted a 1981 case holding that the preservation of the notes was *not* required:

"See *In re Gary G.* (1981) 115 Cal.App.3d 629, 639-642 (prosecution investigator's raw notes used to prepare a formal written report given to the defense should be disclosed if in existence when a discovery order entered, but, if destroyed before entry of the order, no discovery violation); . . ." (*Id.*, at p. 485, fn. 3.)

This single reference in *Thompson* would seemingly answer the question presented here. The *Thompson* court's reference to the holding of the *Gary G.* case reflects longstanding criminal discovery policy in this state. Prior to the enactment of sections 1054-1054.7, California law did not require law enforcement agencies to retain for purposes of discovery notes of witness statements that had been transferred to a formal report. (See, e.g., *People* v. *Von Villas* (1992) 10 Cal.App. 4th 201, 248; *People* v. *Garcia* (1986) 183 Cal.App.3d 335, 348-350; *People* v. *Angeles* (1985) 172 Cal.App.3d 1203, 1211-1217; *People* v. *Tierce* (1985) 165 Cal.App.3d 256, 261-265; *People* v. *Seaton* (1983) 146 Cal.App.3d 67, 75-76; *People* v. *Savage* (1982) 129 Cal.App.3d 1, 2-4; *In re Gary G.* (1981) 115 Cal.App.3d 629, 639-642; *People* v. *Dickerson* (1969) 270 Cal.App.2d 352, 358-360.) In language often quoted, the court in *People* v. *Dickerson*, *supra*, 270 Cal.App.2d at 360, rejected the argument that all interview notes must be preserved for purposes of discovery:

". . . To support such a contention the defense must mean that in connection with any investigation of an alleged crime, everybody carrying on such an investigation must preserve rough notes made for the purpose of ensuring accuracy of their official reports and deliver them upon request to

---

[3] We may assume for our purposes that defense counsel has made "an informal request . . . for the desired materials and information" (§ 1054.5, subd. (b)) immediately upon the filing of the criminal complaint. From that time on, any interview notes of witnesses whom the prosecutor intends to call at the trial could not be destroyed without first being turned over to defense counsel.

defense counsel in order to give possible grounds for cross-examination of such witnesses; no such rule has ever been propounded; it seems to us that it seeks to carry to a ridiculous extreme the enunciation of 'rights of accused criminals.' "

Of course, it is to be recognized that the prosecution has an independent *constitutional* obligation to disclose any material evidence that may tend to exculpate the defendant and must take affirmative steps to preserve such evidence pursuant to the due process clause of the Fourteenth Amendment. (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1233; *Thompson* v. *Superior Court*, *supra*, 53 Cal.App.4th at 484-485; *People* v. *Robinson* (1995) 31 Cal.App.4th 494, 498-499; *Hines* v. *Superior Court* (1993) 20 Cal.App.4th 1818, 1824, fn. 4.) In *People* v. *Roybal* (1998) 19 Cal.4th 481, 509-510, the Supreme Court recently explained:

"Law enforcement agencies have a duty, under the due process clause of the Fourteenth Amendment, to preserve evidence 'that might be expected to play a significant role in the suspect's defense.' (*California* v. *Trombetta* (1984) 467 U.S. 479, 488; accord, *People* v. *Beeler* (1995) 9 Cal.4th 953.) To fall within the scope of this duty, the evidence 'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' (*California* v. *Trombetta*, *supra*, 467 U.S. at p. 489; *People* v. *Beeler*, *supra*, 9 Cal.4th at p. 976."

We are not dealing with exculpatory evidence here, but only with what the new discovery statutes require with respect to nonexculpatory evidence.

Did the 1990 enactment of sections 1054-1054.7 change prior California law with respect to the preservation of interview notes prior to the filing of a criminal complaint? We believe that it did not. First, nothing expressly stated in these statutes requires the preservation of interview notes in the circumstances presented. Hence, if such a requirement were to exist, it would only be indirectly by way of implication.

As previously quoted, section 1054.1 requires the prosecuting attorney to disclose materials and information "if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies." The words "is" and "to be" are in the present tense. The language of section 1054.1 cannot reasonably be construed to require the preservation of nonexculpatory interview notes that have been transferred to a formal report prior to the filing of a criminal complaint.

Initiative measures are subject to the same rules of construction that are

applicable to statutes enacted by the Legislature. (*Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531, 540; *Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 675.) In *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601, the court expressed the governing rules:

> "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.] When ' "statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." ' [Citations.] The plain meaning of the words in a statute may be disregarded only when that meaning is ' "repugnant to the general purview of the act," or for some other compelling reason . . . .' [Citations.] These principles apply as much to initiative statutes as to those enacted by the Legislature. [Citation.]"

In *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097, the court recognized the cardinal rule that a statute '. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citations.]" (See also *Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562; *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 998; *Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381.) Here, the language of section 1054.1 appears unmistakable. No duty to preserve interview notes arises in the instant circumstances.

We have examined the ballot pamphlet in detail with respect to the intent of the people in adopting Proposition 115. (Ballot Pamp., Prim. Elec. (June 5, 1990), Prop. 115, pp. 32-35.) No support may be found therein to require the preservation of nonexculpatory interview notes prior to the filing of a criminal complaint. '[B]allot materials can help resolve ambiguities in an initiative measure [citation], but they cannot vary its plain meaning." (*DaFonte* v. *Up-Right, Inc.*, *supra*, 2 Cal.4th at 602.) "Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] . . . ." (*Lesher Communications, Inc.* v. *City of Walnut Creek*, *supra*, 52 Cal.3d at 543.)

Finally, we need not address the policy reasons that support the destruction of interview notes or the opposing policy reasons for requiring their preservation. That analysis has already taken place (see, e.g., *In re Gary G.*, *supra*, 115 Cal.App.3d at 640-641, 643-644), and the competing concerns are more appropriately addressed to the Legislature rather than to the courts or this office. As stated in *Wells Fargo Bank* v. *Superior Court*, *supra*, 53 Cal.3d at 1099: "Our function is not to judge the wisdom of statutes. [Citation.]" In sum, if interview notes were intended to be preserved in the present circumstances, section 1054.1

could easily have so provided.  (See *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 50; *State Farm Mut. Auto Ins.* v. *Dept. of Motor Vehicles* (1997) 53 Cal.App.4th 1076, 1082.)

The language of section 1054.1 does not change the longstanding duty of law enforcement agencies regarding the preservation of notes of witness statements prior to the filing of a criminal complaint.[4]  We thus conclude that prior to the filing of a criminal complaint, law enforcement agencies may destroy interview notes containing witness statements that have been transferred to a formal report.

\* \* \* \* \*

---

[4] If disclosable evidence is in existence, law enforcement agencies have a general duty to undertake reasonable efforts in good faith to locate it for purposes of discovery.  (*In re Littlefield* (1993) 5 Cal.4th 122, 129-136.)  Nothing in *Littlefield* imposes any duty with regard to evidence not in existence at the time of the filing of the criminal complaint.  (See also *People* v. *Little* (1997) 59 Cal.App.4th 426, 430-433.)